1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9
10

PARAMJIT SINGH BASRA,

11
                    Plaintiff,

12
           v.

13
RICHARD L. MORGAN, et al. et
al.,

14
                    Defendants.

CASE NO. 3:16-cv-06005-RBL-JRC

REPORT AND RECOMMENDATION

NOTED FOR: February 8, 2019

15
16
17
18

This 42 U.S.C. § 1983 civil rights matter has been referred to Magistrate Judge J. Richard
Creatura pursuant to 28 U.S.C. §§ 636 (b)(1)(A) and (B) and Local Magistrate Judge Rules MJR
1, MJR 3, and MJR 4.

19
20
21
22
23
24

Plaintiff argues that his equal protection rights were violated because he, as a Sikh, is
required by his religion to consume milk and butter, but the "mainline alternative" diet plan that
he has been provided does not provide milk or butter, and the religious diet policy forbids him
from trading meal items to acquire milk or butter. He argues that other prisoners on the kosher
and halal diets do not suffer the same predicament because their religious meals provide all the
food their religions require. He also argues defendant Aplin discriminated against him when she

1  unequally enforced the DOC policy forbidding the trading of food against plaintiff, but not

2  against fellow prisoners on the halal or kosher diets.

3      Defendants argue that plaintiff's rights were not violated because he was not treated

4  differently from other similarly situated prisoners, and also argue that defendants cannot be held

5  liable because they have a legitimate penological interest in the policy as implemented.

6      Although the Court has previously found that plaintiff was treated differently from others

7  similarly situated, after further consideration, the Court now finds that defendants' religious diet

8  policy is reasonably connected to a legitimate penological interest, plaintiff has available

9  alternatives to otherwise practice his religion, and the record does not show that there are any

10 ready alternatives to defendants' current policy that would effectuate defendants' legitimate

11 penological goals. Thus, the policy did not infringe on plaintiff's rights and the Court

12 recommends that defendants' motion for summary judgment be granted as to the claims

13 addressing the religious diet policy itself. However, there is still a dispute of material fact as to

14 whether defendant Aplin had discriminatory motive when she unequally applied DOC policy

15 against defendant. Therefore, the Court recommends that defendants' motion for summary

16 judgment be denied as to plaintiff's claims against her.

17                **BACKGROUND and PROCEDURAL HISTORY**

18      Plaintiff initially filed this action in December of 2016. Dkt. 1. After receiving leave from

19 the Court, plaintiff filed a second amended complaint in May of 2017, alleging numerous

20 violations of his First, Eighth, and Fourteenth Amendment rights, as well as violation of the

21 Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Dkt. 31. After defendants

22 filed a motion for summary judgment, Dkt. 39, the Court recommended that all of plaintiff's

23 claims be dismissed except his Fourteenth Amendment equal protection claim pertaining to his

24

1  ability to consume milk and butter in accordance with his Sikh faith. Dkt. 44. The Honorable

2  Ronald B. Leighton adopted that report and recommendation. Dkt. 49.

3       In August of 2018, Judge Leighton entered an order setting deadlines for an additional

4  round of dispositive motions. Dkt. 76. Defendants then filed a second motion for summary

5  judgment. Dkt. 84. Judge Leighton subsequently re-referred this action to the undersigned

6  magistrate judge for a recommendation as to the motion for summary judgment. Dkt. 94.

7                              **STANDARD OF REVIEW**

8       The purpose of summary judgment is to avoid unnecessary trials when there is no dispute

9  over the material facts before the court and the moving party is entitled to judgment as a matter

10 of law. *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1136 (9th Cir. 1975), *overruled on other grounds*

11 *by Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir. 1990). The moving party is entitled

12 to summary judgment if the evidence produced by the parties permits only one conclusion.

13 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). To determine if summary judgment

14 is appropriate, the court must consider whether particular facts are material and whether there is

15 a genuine dispute as to the material facts left to be resolved.  Fed. R. Civ. P. 56(c). The

16 materiality of a given fact is determined by the required elements of the substantive law under

17 which the claims are brought. *Anderson*, 477 U.S. at 248. Factual disputes that do not affect the

18 outcome of the suit under the governing law will not be considered. *Id.* Where there is a

19 complete failure of proof concerning an essential element of the non-moving party's case on

20 which the nonmoving party has the burden of proof, all other facts are rendered immaterial, and

21 the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S.

22 317, 323 (1986); *Anderson*, 477 U.S. at 254 ("the judge must view the evidence presented

23 through the prism of the substantive evidentiary burden"). However, when presented with a

24

1   motion for summary judgment, the court shall review the pleadings and evidence in the light

2   most favorable to the nonmoving party, *Anderson*, 477 U.S. at 255 (citation omitted), and "a pro

3   se complaint will be liberally construed  . . . ." *Pena v. Gardner,* 976 F.2d 469, 471 (9th Cir.

4   1992) (*citing Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (other citation omitted).

5          Once the moving party has carried its burden under Fed. R. Civ. P. 56, the party opposing

6   the motion must do more than simply show that there is some metaphysical doubt as to the

7   material facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The

8   opposing party cannot rest solely on his pleadings but must produce significant, probative

9   evidence in the form of affidavits, and/or admissible discovery material that would allow a

10  reasonable jury to find in his favor. *Id.* at n.11; *Anderson*, 477 U.S. at 249-50. In other words, the

11  purpose of summary judgment "is not to replace conclusory allegations of the complaint or

12  answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497

13  U.S. 871, 888 (1990). However, weighing of evidence and drawing legitimate inferences from

14  facts are jury functions, and not the function of the court. *See United Steel Workers of America v.*

15  *Phelps Dodge Corps.*, 865 F.2d 1539, 1542 (9th Cir. 1989).

16                                    **DISCUSSION**

17  **I.      14th Amendment Equal Protection**

18          Plaintiff's last surviving claim is his allegation that defendants violated his Fourteenth

19  Amendment right to equal protection by failing to provide him with meals that adequately adhere

20  to his Sikh faith, but providing adequate religious meals for other faiths. The Fourteenth

21  Amendment's equal protection clause "is essentially a direction that all persons similarly situated

22  should be treated alike."  *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).

23  To assert a claim under equal protection, plaintiff must show that he was similarly situated to

24

other defendants who received preferential treatment. *See Fraley v. Bureau of Prison*, 1 F.3d 924, 926 (9th Cir. 1993). Thus, plaintiff must show: 1) he is a member of a protected class; and 2) he was being intentionally treated differently from a similarly situated class. *See Washington v. Davis*, 426 U.S. 229, 239 (1976); *Draper v. Rhay*, 315 F.2d 193, 198 (9th Cir. 1963). For equal protection purposes, a "protected class" is a group "comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified." *Thornton*, 425 F.3d at 1167 (citing *Freeman v. City of Santa Ana*, 68 F.3dc 1180, 1187 (9th Cir. 1995). Hence, for plaintiff to prevail on an Equal Protection Clause claim, plaintiff must not only show differential treatment by defendants, but also that defendants intentionally or purposefully discriminated against him.

However, "[w]hen a prison regulation impinges on inmates' constitutional rights, the regulation is [still] valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). First, the Court must consider whether there is a "valid, rational connection" between the prison officials' actions and a legitimate government interest put forward to justify it. *Id.* "[I]f the prison fails to show that the regulation is rationally related to a legitimate penological objective, we do not consider [any] other facts." *Ashker v. Cal. Cep't of Corr.*, 350 F.3d 917, 922. If there is a valid connection, the Court next considers whether there are "alternative means of exercising the right that remain open to prison inmates." *Turner*, 482 U.S. at 90. Next, the court considers what the impact will be on other prisoners and prison officials if the prisoner's request is accommodated. *Id.* Finally, the Court should examine whether there are ready alternatives that prison officials have to effectuate their legitimate penological goal. *Id.* "[T]he absence of ready alternatives is evidence of the reasonableness of the prison regulation." *Id.* In addition, the Court entertains a presumption that prison officials

have acted within their "'broad discretion'" when enacting prison policy. *Shaw v. Murphy*, 532 U.S. 223, 232 (2001) (quoting *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989)).

A. *Equal Protection as to the Religious Diet Policy Itself*

1. *Evidence*

Plaintiff alleges that his equal protection rights were violated when he was forced to maintain a vegan diet without the milk and butter necessary to adhere to his Sikh faith. He states that he was initially on a vegetarian diet upon entering DOC custody, including milk and butter, but that the religious diet policy was changed and he was forced to adopt the "mainline alternative" diet, a vegan diet that does not contain milk or butter. Dkt. 31, pp. 7-9. He further alleges that the kosher and halal diet plans provide milk and butter, but contain meat, consumption of which plaintiff's Sikh faith forbids. *Id*. at p. 9. Plaintiff also appears to argue that only members of the Sikh faith have religious diets that do not fully comport with their faith, and argues that the policy was changed for no reason other than to discriminate against plaintiff. *Id*. at p. 7.

Defendants do not dispute that the DOC previously offered a vegetarian diet, omitting meat products but including dairy products. Dkt. 85, Simpson Decl., ¶8. However, the DOC has since removed its vegetarian diet option, replacing it with the "mainline alternative" diet option, which is vegan and contains neither meat nor dairy products. Dkt. 40, Carney Decl., ¶6. Defendants offer multiple reasons for the decision to eliminate the vegetarian diet option and instead offer a vegan diet option. Defendants state that one reason they chose to change to a vegan diet was because prisoners who required vegan diets, but were required to adhere to the vegetarian diet, were not receiving adequate nutrition. Dkt. 85, Simpson Decl., ¶8. Defendants also state that they chose to transition to a vegan diet option in order to increase efficiency with

1    distribution of food to the DOC prisons from their central food production source – they

2    determined that having multiple different vegetarian options, each with their own particular

3    requirements, as well as a vegan option, was less efficient than having one, universal vegan diet.

4    *Id*. at ¶6. Defendants state further that there are numerous religious diets that can be

5    accommodated by offering a vegan diet, and so having one uniform vegan diet is more efficient

6    than providing a specialized diet for each religion represented in the DOC prisoner population.

7    Dkt. 40, Carney Decl., ¶6.

8        Defendants also do not dispute that plaintiff's current diet plan does not include dairy

9    items such as milk or butter. Dkt. 40, Carney Decl., ¶6. However, defendants argue that plaintiff

10   still has access to dairy items, such as powdered milk that may be bought through the prison

11   commissary. *Id*. at ¶7. Defendants state that plaintiff also has the option to choose a non-

12   vegetarian diet, which includes the dairy and butter plaintiff's faith requires him to consume, and

13   supplement his diet with other vegetarian purchases from the commissary, such as beans and

14   rice, to replace the meat his faith forbids him from eating. *Id*.

15       Defendants also state that, because of the 18,000 prisoners the DOC is responsible for

16   feeding and because of the inefficiency in providing diet plans individualized to each prisoner,

17   DOC policy dictates that prisoners may not elect to "mix" different diet plans. *See* Dkt. 86,

18   Carney Decl., ¶3. They state that the decision to streamline the DOC's meal plans was not based

19   on religious discrimination, or any religious consideration beyond the efficiency of providing

20   diets acceptable to multiple religious dietary restrictions, but was designed to increase efficiency

21   of providing food to prisoners and to ensure that all prisoners received adequate nutrition. Dkt.

22   85, Simpson Decl., ¶8.

23

24

REPORT AND RECOMMENDATION - 7

1    Defendants finally state that staff at prisoner's housing location prepare approximately

2    6,000 meals per day, and that asking prison staff to customize all prisoner meals would be both

3    disruptive and expensive. *Id*. at ¶9.

4        *2.  Differential Treatment*

5    In the Court's previous report and recommendation, the Court found that:

6        [P]laintiff alleges that he is being treated differently from those inmates from other
    religions, as he cannot get a diet that is in accordance with his religious beliefs

7        without Commissary purchases, unlike "offenders on kosher diets" (Dkt. 42, p. 14),
    who "receive fresh milk." Dkt. 31, ¶¶ 17, 22, 27. This is a restriction that, from this

8        record, may exclusively affect those who follow the Sikh religion, and not those
    who follow other religions. *See, e.g.*, Dkt. 31, ¶ 16 ("no food is to be eaten without

9        [milk and butter] for purifying it, commanded in Sikh Holy Scripture (Guru Granth
    Sahib) . . . ."). Plaintiff's allegations that are not disputed by defendants appear to

10       support the contention that defendants provide a diet that accommodates members
    of other religions, but in order for plaintiff to have a diet that accommodates his

11       Sikh religion, he must supplement the provided diet with Commissary purchases
    (which he has to pay for). These purchases required to practice his faith entail

12       differential treatment.

13   Dkt. 44, pp. 27-28.

14   Thus, the Court has already made a determination that plaintiff was treated differently

15   from others similarly situated. Defendants argue that plaintiff has failed to show that "any other

16   religion is permitted to supplement diets with additional food provided by the Department or to

17   share/exchange foods with other inmates in violation of policy." Dkt. 84, p. 7. However, the

18   Court has already found that, based on the current record, plaintiff has provided evidence that the

19   religious meals provided to other prisoners of faith, such as the kosher or halal diets, are

20   sufficient to comport with those prisoners' religious dietary requirements, but that the vegan

21   meal provided to Sikh prisoners is not because it does not contain milk or butter. *Cf. Shoemaker*

22   *v. Williams*, 2013 WL 528306, at *4 (D. Ore. Feb. 11, 2013) (finding that a prisoner had not

23

24

1   shown disparate treatment because all individuals on religious diets were required to be on a

2   vegetarian diet).

3         Thus, the Court has already concluded that plaintiff is being treated differently than other

4   prisoners similarly situated because, unlike other prisoners of other faiths, he is required to buy

5   additional food in order to adhere to his faith. The Court again finds defendants' arguments

6   unpersuasive as to plaintiff's differential treatment. Though defendants argue that the decision to

7   change the policy and require plaintiff to maintain a vegan diet was not motivated by any

8   religious considerations, the Court finds that, because other prisoners of other faiths do not suffer

9   the same alleged hindrance to their ability to eat food in alignment with their religions, this

10  disparate treatment requires the Court to consider whether defendants' decision was reasonably

11  related to a legitimate penological interest pursuant to *Turner v. Safley*. *See Shakur v. Schriro*,

12  514 F.3d 878, 891 (9th Cir. 2008) (holding that a district court erred in not analyzing defendants'

13  policy under *Turner* when a prisoner claimed that he, as a Muslim, was required to maintain a

14  vegetarian diet without halal meat, but Jewish prisoners were allowed kosher meals with kosher

15  meat).

16        *3.  Legitimate Penological Interest Pursuant to* Turner v. Safley

17        Under *Turner*, the Court must first determine whether defendants' policy has a "valid,

18  rational connection" between the prison officials' actions and the legitimate governmental

19  interest put forward to justify it. *Turner*, 482 U.S. at 89. The Ninth Circuit has previously held

20  that prison administrators have "a legitimate interest in running a simplified food service, rather

21  than one that gives rise to many administrative difficulties." *Ward v. Walsh*, 1 F.3d 873, 877 (9th

22  Cir. 1993) (citing *Kahey v. Jones*, 836 F.2d 948, 950 (5th Cir. 1988)). The Ninth Circuit also

23  held that a policy of not providing personalized diets "is related to simplified food service."

24

REPORT AND RECOMMENDATION - 9

1    *Ward*, 1 F.3d at 877. Here, defendants assert that the reason they adopted their current religious

2    diet policy was to streamline and increase the efficiency of providing food for prisoners in their

3    custody. Dkt. 84. They state that the policy of not allowing prisoners to "personalize" their diets

4    furthers an interest in maintaining an organized and efficient meal program. *Id*. Defendants state

5    that the purported purpose behind the policy is not to discriminate against any prisoners, but to

6    more effectively provide food to all prisoners and ensure that all prisoners are receiving an

7    adequately nutritious diet. Thus, the purported reason for the policy is rationally related to

8    maintaining a "simplified food service." The Court must therefore analyze the remaining

9    considerations under *Turner* to determine whether defendants' religious food policy unlawfully

10   infringed on plaintiff's constitutional protections.

11          The Court next considers whether plaintiff has alternative means of exercising his

12   religion. *Turner*, 482 U.S. at 90. Defendants argue that plaintiff has ready alternatives to acquire

13   dairy products in accordance with his faith. Defendants note first that plaintiff can purchase

14   powdered milk at the commissary to supplement his otherwise vegan diet. *See* Dkt. 84, pp. 4-5;

15   Dkt. 40, p. 3. However, plaintiff has stated that he requires fresh milk to comport with his

16   religious tenets, and so "pow[d]ered milk offered on the Mainline Alternative vegetarian

17   Religious diet does not meet his religious needs." Dkt. 31, p. 8. Thus, the Court finds that

18   plaintiff has set forth sufficient facts to demonstrate that access to powdered milk may not be a

19   legitimate alternative for plaintiff to adhere to his religious requirements.

20          Defendants next state that plaintiff could voluntarily switch to a different diet that

21   includes butter and milk, and avoid eating meat while supplementing his meals with vegetarian

22   items, such as rice and beans, also available in the commissary. *See* Dkt. 84, p. 5; Dkt. 40, p. 3.

23   Though the Court notes that requiring a prisoner to forego a portion of his meals and supplement

24

them with commissary purchases places some burden on the prisoner, courts have found that, in the context of a substantial burden to a prisoner's religious practice, requiring a prisoner to purchase items from commissary in order to fulfill his religious obligations does not overly burden the prisoner so long as the prisoner is still provided adequate nutrition. *See Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 814 (8th Cir. 2008) (even "[r]equiring [the plaintiff] to purchase commissary meals does not significantly inhibit, meaningfully curtail, or deny [him] a reasonable opportunity to practice his religion"). In addition, plaintiff does not complain of any other disparate treatment compared to prisoners of other faiths, and so the Court concludes plaintiff is otherwise treated equally with his fellow prisoners. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 351-52 (1987) (finding that, though Muslim prisoners were prohibited from attending a Friday prayer service, there were other alternatives available for observance of their religious practice). Thus, because plaintiff has the option to choose a meal plan that provides fresh milk and supplement his meals using vegetarian food items from the commissary, and because he has not shown that the prison policy treats him differently from his fellow prisoners in any other way, the Court finds that this factor weighs in favor of defendants.

Third, the Court considers the impact of accommodating plaintiff's request on prison guards, fellow prisoners, and the allocation of prison resources. *Turner*, 482 U.S. at 90. Defendants argue that the impact of accommodating plaintiff's request would be significant. They state that, if they accommodate plaintiff's request to deviate from the vegan diet, they would be required to do so for the remaining 18,000 prisoners in DOC custody. Dkt. 84, p. 9. They also state that allowing additional customization beyond the various meal plans that the DOC already offers would be "disruptive and expensive." *Id*. They further argue that accommodating plaintiff's request would undermine the progress DOC has made over the last

1    few years in making food production more streamlined and efficient. *Id*. In contrast, plaintiff

2    argues that there are so few Sikh individuals in DOC custody that accommodation of their

3    dietary needs by providing them a vegetarian diet including dairy, rather than the vegan diet they

4    are currently provided, would "come at a minimal cost and burden to DOC." Dkt. 90, p. 3.

5          Here, though defendants have argued that accommodating plaintiff's dietary request

6    would be expensive and disruptive, they have not provided any evidence as to how disruptive or

7    expensive it would be. They have not submitted any evidence estimating what additional costs or

8    additional duties would be required or how the burden of creating a special diet for Sikh

9    prisoners, which plaintiff has indicated are few in number, would outweigh the benefit. In the

10   past, the Ninth Circuit and other courts have found that summary judgment may be inappropriate

11   unless the district court is able to make specific factual findings regarding the alleged burden of

12   providing accommodation for a prisoner. *See Shakur*, 514 F.3d at 886 ("Without more detailed

13   findings in the record to support [defendants'] assertion, [the Court] cannot determine whether

14   [defendants] would prevail on the third *Turner* factor"); *id*. at 891-92; *see also Hunafa v.*

15   *Murphy*, 907 F.2d 46, 48 (7th Cir. 1990) ("On this record, which consists essentially of a brief

16   affidavit filed by the prison's food administrator that summarizes the prison's concerns but makes

17   no attempt to estimate their magnitude in relation to the plaintiff's religious claims, the balance is

18   too close for summary judgment to be proper").

19         In addition, though the Ninth Circuit has not stated so explicitly, the Ninth Circuit

20   appears to rely on a Fifth Circuit case which indicates that prisoners, though entitled to

21   religiously adequate diets, are not entitled to particularized religious dietary requests. *See Kahey*,

22   836 F.2d at 949-50. Defendants have provided declarations indicating that it would be disruptive

23   and not cost effective to allow prisoners to individually choose their own diets, and so the DOC

24

REPORT AND RECOMMENDATION - 12

1    has prohibited the "mixing" of diets. Dkt. 85, Simpson Decl., ¶9; Dkt. 86, Carney Decl., ¶4.

2    Thus, insofar as defendants argue that the cost of implementing a new policy accommodating

3    plaintiff's request would outweigh its benefit, the record before the Court does not allow the

4    Court to make that determination.

5          However, if plaintiff is not requesting a change of policy, but rather requests that

6    defendants accommodate only his individual, particularized diet request, prison staff are not

7    required to accommodate each prisoners' particularized diet request under the Constitution. *See*

8    *Kahey*, 836 F.2d at 949-50 (prison staff need not accommodate each particularized diet request

9    submitted by prisoners). Thus, insofar as plaintiff only requests that his own diet be

10   accommodated, the Court finds that, regardless of cost, defendants do not have an obligation to

11   do so and so this factor weighs in favor of defendants.

12         Finally, the Court considers whether there are ready alternatives to the course of action

13   chosen by defendants. *Turner*, 482 U.S. at 90-91. Plaintiff must show that any alternatives would

14   have a "*de minimis* cost to valid penological interests." *Id*. Here, plaintiff argues, and defendants

15   do not dispute, that defendants previously had a vegetarian option that included milk and butter.

16   Dkt. 90, p. 4. He also argues that other prisoners on other religious diets, as well as the standard

17   mainline diet, receive butter and milk. *Id*. He argues that the only reason defendants have offered

18   for declining to provide plaintiff with milk and butter "is that it is more convenient for them to

19   do so." *Id*. at p. 6. Plaintiff thus argues that convenience, rather than efficiency or excessive cost,

20   are the reasons defendants have denied plaintiff his accommodation.

21         Defendants argue that the alternative suggested by plaintiff would require defendants to

22   also allow all 18,000 prisoners in DOC custody to individualize their meal plans. Dkt. 84, p. 9.

23   They have submitted a declaration indicating that doing so would undermine the entire purpose

24

REPORT AND RECOMMENDATION - 13

1    behind the streamlined food service that the DOC has spent the last several years developing.

2    Dkt. 85, Simpson Decl., ¶9. They have also provided evidence that they switched from a

3    vegetarian diet option to a vegan diet option to improve the efficiency of providing food for

4    prisoners, and so switching back would undermine the efficiency they have attained. *Id*. at ¶8.

5    Defendants also argue that the cost of any alternative would not be de minimus, Dkt. 84, p. 9,

6    providing evidence that staff at plaintiff's location provide 6,000 meals per day and thus

7    allowing a significant number of those to be individualized would be impractical, Dkt. 85,

8    Simpson Decl., ¶9. Plaintiff's reply suggests that a possible alternative would be to create a

9    separate meal plan for Sikh prisoners, providing them with the vegan diet but supplementing it

10   with additional milk and butter, thus effectively reinstituting the previously abandoned

11   vegetarian meal option for Sikh prisoners. Dkt. 90, p. 3.

12        Here, defendants have provided evidence that the decision to switch to the vegan diet was

13   motivated by a desire to increase efficiency. The alternatives to this vegan diet plan would be to

14   allow plaintiff an individualized diet, which would entail allowing all other inmates to have an

15   individualized diet, or changing the policy back to the vegetarian option, thus returning to the

16   policy before defendants altered it in the interests of efficiency. Plaintiff has provided no other

17   suggestions for ready alternatives that would achieve defendants' legitimate penological interests

18   while also accommodating plaintiff's request. Thus, the Court finds that plaintiff has not

19   demonstrated that there are viable, ready alternatives to defendants' current policy. Therefore,

20   the Court finds that this factor weighs in favor of defendants.

21        The Court finds that the streamlining of religious diets, which substituted a vegetarian

22   diet with a vegan diet, has a reasonable connection to the legitimate penological goal of a

23   simplified meal service. The Court also finds that plaintiff has alternatives available for him to

24

REPORT AND RECOMMENDATION - 14

engage in his religious practice and that plaintiff has not shown he is being treated differently in

any other way. Defendants have not submitted evidence indicating the cost of including an

additional meal plan that would apply only to Sikh prisoners, and so insofar as plaintiff requests

that the policy be changed for all Sikh prisoners, the Court cannot make the determination that it

is cost prohibitive. However, insofar as plaintiff requests that only his own, personal diet be

accommodated, the Court finds that, regardless of cost, prison staff are not required under the

Constitution to accommodate individualized religious diet requests. Finally, the Court finds that

plaintiff has not shown that there are any ready alternatives for defendants' policy. In addition,

the Court finds defendants are entitled to the presumption that enacting a policy that addresses a

legitimate penological interest is within their broad discretion. *See Shaw*, 532 U.S. at 232. Thus,

the Court finds that *Turner* ultimately weighs in favor of defendants. Therefore, the Court

recommends that defendants' motion for summary judgment (Dkt. 84) be granted as to plaintiff's

claims regarding the adoption of the vegan religious diet.

    B.  *Equal Protection as to Enforcement of Religious Diet Policy*

        Plaintiff also alleges that his equal protection was violated when he was forbidden from

trading meal items with other prisoners or taking items other prisoners had discarded in order to

acquire the milk or butter required by his Sikh faith. Dkt. 31, p. 8.

        As the Court found in its previous report and recommendation:

> [P]laintiff also alleges that defendant "C/O Aplin on 7/11/2015 stopped [plaintiff]
> from drinking the half pint paper carton of milk given to him by another inmate,"
> and "took disciplinary action against [plaintiff], even though similar food item
> trades took place in front of her between halal and kosher diets." *Id*. at ¶¶ 18, 27.
> Plaintiff alleges that when he asked why he was stopped from drinking the milk,
> C/O Aplin responded that it was because plaintiff is "from the wrong neck of the
> woods." *Id*. at ¶ 19. Plaintiff alleges that the "inmate who gave [plaintiff] the milk
> was not accosted or infracted, despite clear policy against passing items in the
> dining area during meal times," *Id*. He alleges that when he "attempted to protest
> C/O Aplin's selective rule enforcement in his poor English, she ordered him to

1

2

throw out his uneaten breakfast." *Id*. Defendant Aplin also gave plaintiff an infraction pursuant to DOC policy for drinking containers of milk "from the space immediately after the serving window, where inmates routinely place items from their trays they don't want." *Id.* at ¶ 20. Plaintiff alleges that "he feels discriminated against because C/O Aplin looks at many halal and kosher diet items traded back and forth with even non religious diet items, but she seems to only take exception when he attempts to drink milk." *Id.* at ¶ 21.

3

4

5

6

Therefore, defendants' argument that "there is no evidence any other religion is permitted to mix diets or to share/exchange foods with other inmates in violation of policy" is not persuasive as plaintiff's allegations sworn under penalty of perjury are evidence that support his claim.

7

Dkt. 44, pp. 28-29.

8

9

Plaintiff alleges, and defendants do not dispute, that the DOC religious diet policy

10

prohibits prisoners from trading meal items. *See* Dkt. 31, p. 8. Further, the Court has already

11

found that the religious diet policy is not itself unconstitutional. *See* section I(A) *supra*.

12

However, "[t]he unlawful administration by a prison regulation that is fair on its face, but which

13

results in its unequal application to those who are entitled to be treated alike, is not a denial of

14

equal protection unless there is shown to be present in it an element of intentional or purposeful

15

discrimination." *Marques v. Nevada*, 2010 WL 3810073, at *5 (D. Nev. Sept. 21, 2010) (citing

16

*Snowden v. Hughes*, 321 U.S. 1, 8 (1944)). The Ninth Circuit has held that "[section] 1983

17

claims based on Equal Protection violations must plead intentional unlawful discrimination or

18

allege facts that are at least susceptible of an inference of discriminatory intent." *Monteiro v.*

19

*Tempe Union High Sch. Dist.,* 158 F.3d 1022, 1026 (9th Cir. 1998) (citing *De La Cruz v.*

20

*Tormey,* 582 F.2d 45, 58 (9th Cir.1978), *cert. denied,* 441 U.S. 965 (1979).

21

Here, plaintiff has provided evidence in the form of his complaint, sworn under penalty

22

of perjury, that defendant Aplin enforced the policy against trading meal items when plaintiff

23

attempted to consume milk received from another prisoner. However, he has also provided

24

evidence that, though she reprimanded plaintiff for drinking the milk, she did not reprimand the

1   other prisoner for providing the milk. He has also provided evidence that defendant Aplin allows

2   prisoners who are on kosher or halal diets to trade their meal items, and appears only to take

3   exception to plaintiff attempting to supplement his religiously inadequate diet with dairy

4   products. Finally, plaintiff has provided evidence that defendant Aplin enforced the policy

5   against plaintiff because he was "from the wrong neck of the woods." Defendant Aplin disputes

6   this evidence. Taken together, the Court finds that this evidence generates a dispute of material

7   fact as to defendant Aplin's motivation for allegedly enforcing the religious diet policy against

8   plaintiff differently than prisoners of different faiths. Based on defendant Aplin's alleged actions,

9   the Court finds that a reasonable juror could infer that defendant Aplin purposefully applied the

10  religious diet policy unequally, only enforcing it against plaintiff because of his Sikh faith and

11  requirement that he consume milk and butter. Thus, the Court finds that there is a dispute of

12  material fact as to whether defendant Aplin violated plaintiff's equal protection rights. Therefore,

13  the Court recommends that defendants' motion for summary judgment be denied as to defendant

14  Aplin.

15          **II.     Qualified Immunity**

16          Defendants argue that they are entitled to qualified immunity. Because the Court has

17  determined only that the actions of defendant Aplin should proceed, *see* section I *supra*, the

18  Court will only make a determination as to qualified immunity with regard to defendant Aplin.

19          A defendant is entitled to qualified immunity if his or her conduct "does not violate

20  clearly established statutory or constitutional rights of which a reasonable person would have

21  known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Plaintiff bears the burden of proving

22  that the right allegedly violated was clearly established at the time of the violation; if the plaintiff

23  meets this burden, then the defendant bears the burden of establishing that the defendant

24

1   reasonably believed the alleged conduct was lawful. *See Sorrels v. McKee*, 290 F.3d 965, 969

2   (9th Cir. 2002); *Trevino v. Gates*, 99 F.3d 911, 916-17 (9th Cir. 1996); *Browning v. Vernon*, 44

3   F.3d 818, 822 (9th Cir. 1995); *Neely v. Feinstein*, 50 F.3d 1502, 1509 (9th Cir. 1995), *overruled*

4   *in part on other grounds by L.W. v. Grubbs*, 92 F.3d 894 (9th Cir. 1996). A right is clearly

5   established if its contours are "sufficiently clear that a reasonable official would understand that

6   what he is doing violates that right." *Kennedy v. City of Ridgefield,* 439 F.3d 1055, 1065 (9th Cir.

7   2006) (quoting *Hope v. Pelzer,* 536 U.S. 730, 739 (2002)). It is not necessary that there be a prior

8   case with identical facts showing that a right is clearly established. It is enough that there is

9   preexisting law that provides a defendant "fair warning" that his conduct was unlawful. *Kennedy,*

10  439 F.3d at 1065.

11        It has long been clearly established that it is unlawful for a state actor to treat an

12  individual in a protected class differently from others similarly situated. *See Fraley*, 1 F.3d at

13  926; *Davis*, 426 U.S. at 239; *Draper v. Rhay*, 315 F.2d at 198. Here, as noted above, there is a

14  dispute of material fact as to whether defendant Aplin treated plaintiff differently from other

15  similarly situated prisoners of faith and whether she had discriminatory motive in doing so. *See*

16  section I(B) *supra*. Reading the facts in the light most favorable to plaintiff, however, the Court

17  finds that it was clearly established that differentially applying a prison policy to a prisoner based

18  on their faith was unconstitutional at the time of the allegations in plaintiff's complaint. The

19  Court further finds that there is a dispute of material fact as to whether defendant Aplin had a

20  discriminatory motive when she differentially applied a DOC policy to plaintiff.

21        Thus, the Court finds defendant Aplin is not entitled to qualified immunity at this time.

22  Therefore, the Court recommends that defendants' motion for summary judgment be denied as to

23  defendant Aplin's qualified immunity.

24

1

**CONCLUSION**

2        For the reasons set forth above, the Court recommends that defendants' motion for

3 summary judgment (Dkt. 84) be granted in part. Plaintiff's allegations that the DOC's religious

4 diet policy was promulgated in violation of his equal protection rights should be dismissed.

5 However, there is still a dispute of material fact as to plaintiff's allegations against defendant

6 Aplin and her alleged differential application of the DOC policy, and so that claim should

7 proceed on the merits.

8        Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

9 fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

10 6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo*

11 review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those

12 objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v.*

13 *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

14 imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **February 8,**

15 **2019** as noted in the caption.

16        Dated this 18th day of January, 2019.

17

18                                                    J. Richard Creatura
                                                      United States Magistrate Judge
19

20

21

22

23

24